J-S13012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT REAGAN | |
| Appellant | No. 529 WDA 2015 |

Appeal from the Judgment of Sentence March 12, 2015
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0002403-2013

BEFORE: LAZARUS, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:               **FILED FEBRUARY 23, 2016**

Robert Reagan appeals from the judgment of sentence entered in the Court of Common Pleas of Cambria County after a jury convicted him of one count each of delivery of a controlled substance[1] and possession of a controlled substance.[2] Upon careful review, we affirm.

The trial court set forth the facts of this case as follows:

On January 17, 2012, the Cambria County Drug Task Force executed a controlled buy after receiving information that [Reagan] illegally distributed bath salts. An undercover police officer, Detective Lia DeMarco, and an undercover police informant testified regarding their participation in the controlled

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

buy. The informant testified he called [Reagan] to arrange a deal to buy bath salts for $150.00. Detective DeMarco drove the informant to meet [Reagan] at his home and then to a pull-off to purchase the bath salts. At the pull-off, the informant and [Reagan] exchanged cash for two vials, which were submitted into evidence without objection.

At trial, Detective Kevin Price, Drug Task Force Field Supervisor, testified that a controlled buy includes photocopying the official funds to be used; strip searching the informant before and after the buy; activating a video device on the informant; and conducting surveillance of the buy. Detective Price confirmed that the Drug Task Force properly implemented these techniques during the controlled buy from [Reagan].

Douglas Samber, a forensic scientist for the Pennsylvania State Police Greensburg Regional Laboratory, testified as an expert in laboratory analysis, laboratory procedures, and analysis of controlled substances. Mr. Samber tested the contents of the vials purchased from [Reagan] and concluded they contained Pyrovalerone, a Schedule V controlled substance.

Trial Court Opinion, 5/18/15, at 1-2 (internal citations to record and footnote omitted).

On January 21, 2014, the Commonwealth filed an information in which it alleged that Reagan possessed and delivered "Bath Salts, a Schedule I Controlled Substance." Information, 1/21/14. Just prior to the commencement of jury selection on October 2, 2014, the Commonwealth moved for a continuance to enable it to amend its information to properly classify the drug involved – pyrovalerone – as a Class V controlled substance. The court granted the continuance and the information was amended to reflect the proper classification of the drug, which the Commonwealth continued to refer to as "bath salts."

A jury trial was held on December 11 and 12, 2014. At the conclusion of the Commonwealth's case, Reagan moved for judgment of acquittal, arguing that the Commonwealth did not prove he possessed or delivered "bath salts." The motion was denied and Reagan was found guilty of the above offenses. On March 12, 2015, the court sentenced Reagan to 6 to 12 months' imprisonment, to run consecutively to another sentence he is currently serving. Reagan filed a timely notice of appeal, followed by a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On appeal, Reagan asserts that the Commonwealth failed to present sufficient evidence to convict him of possession and delivery of "bath salts," as alleged in the information, where the actual substance contained pyrovalerone.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mauz*, 122 A.3d 1039, 1040-41 (Pa. Super. 2015) (citation omitted).

The purpose of an information is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act. ***Commonwealth v. Alston***, 651 A.2d 1092, 1095 (Pa. 1994) (citations omitted). An information is sufficient if it sets forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events. ***Id.***

At an earlier stage of legal development, indictments were strictly and technically construed, and the slightest imprecision in wording was often considered incurable error. ***Commonwealth v. Pope***, 317 A.2d 887, 890 (Pa. 1974). Today, however, such arguments are unpersuasive. ***Id.*** Indictments must be read in a common-sense manner, and are not to be construed in an overly technical sense. ***Id.***

Here, Reagan concedes that he had sufficient notice of the crimes of which he was accused. Instead, he asserts that "the Commonwealth did not prove what it had set out to prove in its information." Brief of Appellant, at 17. Reagan claims that the Commonwealth did not present sufficient evidence to prove that "bath salts" is the street name for pyrovalerone, the drug he sold to the informant.

In ***Commonwealth v. Kelly***, 409 A.2d 21 (Pa. 1979), our Supreme Court was presented with the defendant's claim that judgment should have been arrested because the complaint charged that he was in possession of

heroin, but the proof at trial showed the controlled substance to have been methamphetamines. The Court rejected the argument, concluding that "[v]ariations between allegations and proof at trial are not fatal unless a defendant could be misled at trial, prejudicially surprised in efforts to prepare a defense, precluded from anticipating the prosecution's proof, or otherwise impaired with respect to a substantial right." *Id.* at 23.

In his brief, Reagan acknowledges that "*Kelly* appears to remain good law, as the Supreme Court has cited to both cases in addressing claims by defendants that are based on variances in proof." Brief of Appellant, at 20. However, Reagan cites the age of the case, as well as the fact that this Court has not applied it to a drug case in over thirty years, and essentially asks us to disregard its holding.

In support of his claim, Reagan also cites to the decision of the U.S. Court of Appeals for the Third Circuit in *United States v. Tucker*, 703 F.3d 205 (3d Cir. 2012). There, the Third Circuit addressed whether the defendant's previous Pennsylvania conviction for possession with intent to deliver qualified as a "serious drug offense" under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). However, *Tucker* is not only not binding on this Court, but also inapposite. Specifically, *Tucker* does not concern itself with the propriety of the underlying state conviction, i.e., whether the Commonwealth's evidence was sufficient to convict him of the state charges. Indeed, the Third Circuit did not hold that Tucker was improperly convicted under Pennsylvania law. Rather, it concluded only that

Tucker's Pennsylvania convictions did not satisfy the requirements necessary for the imposition of an enhanced sentence under the ACCA. Accordingly, *Tucker* provides no guidance here.

The amended information charged Reagan with possessing and distributing a Schedule V controlled substance. Although that substance was described by the street name "bath salts," we find that the amended information provided Reagan with adequate notice of the charges against him to enable him to prepare his defense. *Alston*, *supra*; *Kelly*, *supra*. Moreover, the evidence adduced at trial was sufficient to enable the jury to infer that the street name for pyrovalerone in Cambria County is "bath salts." *See Mauz*, *supra* (in sufficiency claim, prosecution receives benefit of all reasonable inferences to be drawn from evidence adduced at trial). Specifically, Detective DeMarco testified that the informant spoke with Reagan and made arrangements to buy a drug called "blizzard," which she testified is also known locally as "bath salts." N.T. Trial, 12/11/14, at 29-30. In addition, the informant, Donald Forshey, testified that after speaking with Reagan on the telephone, he understood he would be purchasing bath salts and that it would cost a total of $150. *See id.* at 76. Forshey further stated that he met Reagan in Reagan's garage and discussed obtaining bath salts. *Id.* at 78. Based on this testimony, it is clear that Reagan understood that Forshey wanted to purchase bath salts and provided him with the drug known by that name. Accordingly, Reagan is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2016